J-S23026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL JOHNSON | : | |
| | : | |
| Appellant | : | No. 1950 EDA 2020 |

Appeal from the PCRA Order Entered September 16, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0003440-2011.

BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

JUDGMENT ORDER BY KUNSELMAN, J.: **FILED SEPTEMBER 17, 2021**

Nathaniel Johnson appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> [The victim] was eleven years old when [Johnson] raped her. She was eighteen years old when she testified at trial. In the summer of 2007, she was living with her mother, two brothers, and aunt. She spent many weekends with her godfather Eric and his mother, "Gammie." Usually, Eric would pick [the victim] up and bring her to Gammie's house. On one occasion that summer, [Johnson]—Eric's brother— picked [the victim] up. Instead of bringing her directly to Gammie's house, however, [Johnson] first brought her to his apartment. Once inside, he removed [the victim's]

_____

[*] Retired Senior Judge assigned to the Superior Court.

clothing and penetrated her vagina with his penis. After the assault, [Johnson] took her to Gammie's house. [The victim] did not initially report the assault to anyone. She told her mother that she did not want anyone to take her to Gammie's house. When her mother told her she could not go without an adult, [the victim's] behavior began to change. She became angry and aggressive, and her relationship with her mother and father became strained. When she was thirteen, [the victim] showed a social worker a page from her diary recounting the rape. The assault was reported to the Department of Human Services and the Special Victims Unit.

On January 16, 2015, a jury found [Johnson] guilty of rape of a child, unlawful contact with a minor, unlawful restraint, corruption of minors, and indecent assault. [The trial court] deferred sentencing for completion of a presentence investigation, mental health evaluation, and evaluation by the Sexual Offenders Assessment Board ("SOAB"). [After a hearing, the trial court found that the Commonwealth failed to meet its burden of proving that Johnson met the criteria of a sexually violent predator]. On December 9, 2015, [the trial court] sentenced [Johnson] to an aggregate term of 25 to 50 years of incarceration. [Johnson] filed a post-sentence motion on December 11, 2015, which [the trial court] denied on March 31, 2016.

PCRA Court Opinion, 2/9/21, at 1-2 (citations and footnotes omitted).

Johnson filed a timely appeal to this Court. On June 28, 2018, we rejected Johnson's illegal sentence claim and affirmed his judgment of sentence. *Commonwealth v. Johnson*, 193 A.3d 1121 (Pa. Super. 2018) (non-precedential decision). Johnson did not seek further review.

On February 12, 2019, Johnson filed a *pro se* PCRA petition, and the PCRA court appointed counsel. On November 18, 2019, PCRA counsel filed an amended PCRA petition. Thereafter, the Commonwealth filed a motion to dismiss the petition. On August 12, 2020, the PCRA court issued a

Pa.R.Crim.P. 907 notice of its intent to dismiss Johnson's PCRA petition without a hearing. Johnson did not file a response. By order entered September 16, 2020, the PCRA court denied Johnson's petition. This timely appeal followed. Both Johnson and the PCRA court complied with Pa.R.A.P. 1925.

Johnson raises the following issues on appeal:

1. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented that trial counsel was ineffective for failing to investigate and present available defense witnesses; failing to provide notice of an alibi defense and present alibi evidence and witness; failing to present exculpatory defense evidence; failing to litigate a Rule 600 motion; failing to object to the admissibility of evidence and amendments to the bills of information; and refusing to allow [Johnson] to testify in his own defense.

2. Whether the PCRA court erred by dismissing [Johnson's] PCRA petition when clear and convincing evidence was presented that appellate counsel was ineffective for failing to pursue claims challenging both the sufficiency and the weight of the evidence.

3. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented of violations of [Johnson's] constitutional rights at trial and on direct appeal.

4. Whether the PCRA court erred by dismissing [Johnson's] PCRA petition because the trial court issued an illegal sentence by imposing a third-strike sentence enhancement despite [Johnson] never previously being sentenced as a second strike offender, and by the punitive registration requirement of SORNA which violated [Johnson's] due process rights and extended the length of the sentence beyond the statutory maximum.

5. Whether the PCRA court erred by failing to grant an evidentiary hearing.

- 3 -

Johnson's Brief at 9.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Here, the PCRA court has authored a thorough and well-reasoned opinion supporting the denial of post-conviction relief. The Honorable Donna M. Woelpper has addressed each of Johnson's claims with proper citation to legal authorities and citation to the certified record. We discern no legal errors in Judge Woelpper's analysis and conclusion that each claim is either without merit, waived, or previously litigated under the PCRA. As such, we adopt Judge Woelpper's opinion as our own in affirming the order denying Johnson post-conviction relief. *See* PCRA Court's Opinion, 2/9/21, at 3-21 (concluding

- 4 -

that each of Johnson's claims of ineffectiveness regarding trial and appellate counsel had no merit); and at 22 (concluding Johnson's challenge to his sentencing as a "third strike" was previously litigated under the PCRA and citing **Commonwealth v. Lacombe**, 234 A.3d 602 (Pa. 2020) for the proposition that Subchapter I of SORNA does not constitute criminal punishment).[1]

Finally, because we agree with Judge Woelpper that Johnson's post-conviction claims did not warrant an evidentiary hearing, Johnson's claim to the contrary fails. **Blakeney supra**.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/17/2021

_____

[1] The parties are directed to attach Judge Woelpper's February 9, 2021, opinion to this memorandum in any future appeal.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0003440-2011 |
| | : | |
| v. | : | |
| | : | SUPERIOR COURT |
| NATHANIEL JOHNSON | : | 1950 EDA 2020 |

OPINION

WOELPPER, J.                                          FEBRUARY 9, 2021

## I.     PROCEDURAL & FACTUAL BACKGROUND

Nathaniel Johnson ("Petitioner") appeals this Court's dismissal of his petition for post-conviction relief.

A summary of the relevant facts and procedural history of the case is as follows. I.J.J. was eleven years old when Petitioner raped her. She was eighteen years old when she testified at trial. In the summer of 2007, she was living with her mother, two brothers, and aunt. She spent many weekends with her godfather Eric and his mother, "Gammie." Usually, Eric would pick I.J.J. up and bring her to Gammie's house. On one occasion that summer, Petitioner—Eric's brother—picked I.J.J. up. Instead of bringing her directly to Gammie's house, however, Petitioner first brought her to his apartment. Once inside, he removed I.J.J.'s clothing and penetrated her vagina with his penis. After the assault, Petitioner took her to Gammie's house. I.J.J. did not initially report the assault to anyone. She told her mother that she did not want anyone to take her to Gammie's house. When her mother told her she could not go without an adult, I.J.J.'s behavior began to change. She became angry and aggressive, and her relationship with her mother and father became strained. When she was thirteen, I.J.J. showed a social

worker a page from her diary recounting the rape. The assault was reported to the Department of Human Services and the Special Victims Unit. Notes of Testimony ("N.T."), 1/14/2015, at 20–22, 29, 31, 37–39, 56, 74.

On January 16, 2015, a jury found Petitioner guilty of rape of a child, unlawful contact with a minor, unlawful restraint, corruption of minors, and indecent assault.[1] This Court deferred sentencing for completion of a presentence investigation, mental health evaluation, and evaluation by the Sexual Offenders Assessment Board ("SOAB").[2] On December 9, 2015, this Court sentenced Petitioner to an aggregate term of 25 to 50 years of incarceration. Petitioner filed a post-sentence motion on December 11, 2015, which this Court denied on March 31, 2016. Petitioner timely appealed to the Superior Court on April 14, 2016. On June 28, 2018, the Superior Court affirmed Petitioner's judgment of sentence.

On February 12, 2019, Petitioner filed a petition pursuant to the Post Conviction Relief Act ("PCRA"). Court appointed counsel, Lawrence J. O'Connor Jr., Esq., entered his appearance on September 25, 2019[3] and filed an amended PCRA petition on November 18, 2019.[4] On February 19, 2020, the Commonwealth responded with a motion to dismiss.

On August 12, 2020, this Court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition without a hearing. This Court formally dismissed the PCRA petition on September 16, 2020. Petitioner filed a notice of appeal to the Superior Court on October 12, 2020. On October 20, 2020, this Court ordered Petitioner to file a concise statement of errors

---

[1] 18 Pa.C.S. §§ 3121(c); 6318(a)(1); 2902(a)(1); 6301(a)(1); and 3126(a)(7), respectively.
[2] After a hearing, this Court found that the Commonwealth failed to meet its burden of proving that Petitioner met the criteria of a sexually violent predator. N.T. 12/4/2015, at 44.
[3] Previously appointed counsel, Matthew F. Sullivan, Esq., entered his appearance on April 22, 2019 and subsequently moved to withdraw on September 10, 2019.
[4] Petitioner filed a *pro se* amended PCRA petition on September 30, 2019.

2

complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Counsel filed a

1925(b) statement on behalf of Petitioner on November 2, 2020.

## II.    DISCUSSION

Petitioner raises claims concerning the effectiveness of trial counsel, the effectiveness of

appellate counsel, and the legality of his sentence.

### Effectiveness of Trial Counsel

As to trial counsel, Petitioner argues:

> 1. Trial counsel was ineffective for failing to investigate and present available defense witnesses.
>
> 2. Trial counsel was ineffective for failing to provide notice of an alibi defense and present alibi evidence and witness.
>
> 3. Trial counsel was ineffective for failing to present exculpatory defense evidence.
>
> 4. Trial counsel was ineffective for failing to litigate a Rule 600 motion.
>
> 5. Trial counsel was ineffective for failing to object to the admissibility of evidence and amendments to the bills of information.
>
> 6. Trial counsel was ineffective for refusing to allow Petitioner to testify in his own defense.

Statement of Errors, at ¶ 1.

> In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S. § 9543(a)(2)(i).
>
> It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying

3

substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa. Super. 2016) (quotation marks, quotations, and citations omitted).

Petitioner claims trial counsel was ineffective for failing to investigate and present available defense witnesses. In his counseled amended petition, Petitioner specifically identified three fact witnesses whom he asserts trial counsel should have presented at trial. He averred that Tanya Anderson, Tracey Shaw, and Virginia Coleman were available to testify. Ms. Anderson and Ms. Shaw would have authenticated a photograph "depicting certain unique markings on [Petitioner's] lower body" and "provide[d] corroborating testimony regarding the distinctive and extremely noticeable markings on [P]etitioner's lower body." *See* Amended Petition for Relief Pursuant to the Post Conviction Relief Act, 11/18/2019, at 4.[5] Petitioner also claims that trial counsel refused to present Theresa Sullivan from the Institute for Community Justice as a witness. He contends that Ms. Sullivan's testimony "would have undermined the credibility of the complaining witness." *Id.*

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the ineffectiveness assistance of counsel test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

---

[5] Petitioner's amended PCRA petition does not contain pagination. For ease of review, we have assigned each page a corresponding page number.

4

*Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa. Super. 2020) (brackets omitted) (quoting *Commonwealth v. Sneed*, 45 A.3d 1096, 1108–09 (Pa. 2012)). "Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense." *Id.* (quotation marks and citation omitted).

As to Ms. Sullivan, Petitioner failed to develop this claim. Therefore, this Court cannot engage in meaningful review. The remainder of Petitioner's claim fails due to lack of prejudice. During trial, Brandon Holiday testified on behalf of the defense. Mr. Holiday, employed as a private investigator, was hired by trial counsel to investigate Petitioner's case. N.T. 1/15/2015, at 11. As part of his investigation, Mr. Holiday interviewed Petitioner on March 16, 2014 and took photographs of his genital area on June 10, 2014. *Id.* at 18–19. Mr. Holiday identified Exhibits D-3A, D-3B, and D-3C as a close-up photograph of Petitioner holding his penis in his hand, a side profile of Petitioner and his genital area, and a front view of Petitioner and his genitals, respectively. *Id.* at 20. These photographs were published to the jury and later moved into evidence.

Furthermore, during a colloquy with this Court, Petitioner answered "no" when asked if there were any other witnesses that he wished to call. N.T. 1/15/2015, at 9. Lastly, during his closing argument, trial counsel emphasized the importance of the photographs taken of Petitioner's genitals.

> And, the most powerful piece of evidence, in my opinion, and one of the things that the Judge asked you, if you could be fair about, is [Petitioner's] mark on his genitals. Nobody wanted to come here and see that, I certainly didn't want to see it, but it's vital because she testified, she told you. She sat here, and of the little information she did disclose was that it was black. She also said

that in her statement, she said she saw it and it was black. The mark on it is something that you cannot miss. The mark on it is something that anyone would have noticed. You didn't have to sit and stare at the picture to see it. It was right in front of you, there is a mark on it. I am sure everyone saw that. I don't need to see anything else.

N.T. 1/15/2015, at 9–10. Accordingly, Petitioner's first claim is without merit.

Next, Petitioner claims trial counsel was ineffective for failing to provide notice of an alibi defense and failing to present an alibi witness and evidence. "Generally, an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party.... At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi." *Commonwealth v. Ali*, 10 A.3d 282, 316 (Pa. 2010) (citation omitted).

Contrary to Petitioner's contention, trial counsel filed a "Notice of Possible Alibi Defense" on May 7, 2014. The notice read, in pertinent part, as follows, "Between 7-15-2007 until the next day, [Petitioner] was at Velda Young's [r]esidence.... At this time, defense counsel asserts that he may present an alibi defense at trial and may call one or more of the following witnesses on [Petitioner's] behalf...." Notice of Possible Alibi Defense, 5/7/2014, at ¶¶ 4–5. In the alibi notice, trial counsel provided Ms. Young's address and telephone numbers.

However, on January 13, 2015, the Commonwealth sought to amend the bills of information due to the victim's inability to recall the specific date. *See* N.T. 1/13/2015, at 3–8. This Court granted the Commonwealth's motion to amend the bills of information from an offense date of July 15, 2007 to the summer of 2007. *Id.* This amendment rendered Petitioner's alibi for July 15, 2007 irrelevant. Therefore, Petitioner cannot establish that he was prejudiced by trial counsel's decision not to present Ms. Young as an alibi witness.

6

Petitioner next claims that trial counsel was ineffective for failing to present exculpatory defense evidence. He maintains that he "provided [trial] counsel with a photograph depicting certain unique markings on his lower body. The markings were so distinctive that the complainant would have noticed and remembered them." Statement of Errors, at ¶ 1. Petitioner's claim fails for lack of prejudice. As discussed earlier, Mr. Holiday identified photographs he had taken of Petitioner's genital area. These photographs were also shown to the jury. Accordingly, trial counsel was not ineffective for failing to present an additional photograph of Petitioner's lower body.

In his next claim, Petitioner argues that trial counsel was ineffective for failing to litigate a Rule 600 motion. This claim lacks arguable merit. On November 21, 2013, the Honorable Nina Wright Padilla denied Petitioner's Rule 600(a) motion to dismiss. On January 13, 2015, this Court denied Petitioner's motion to dismiss pursuant to Rule 600(a).

Petitioner also argues that his constitutional right to a speedy trial was violated. It is well settled that

> [a] speedy trial analysis ... mandates a two-step inquiry: (1) whether the delay violated Pennsylvania Rule of Criminal Procedure [600]; and, if not, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution.

*Commonwealth v. Colon*, 87 A.3d 352, 356 (Pa. Super. 2014) (citation omitted).

Pursuant to Rule 600, a criminal trial must "commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). After 365 days have passed, a defendant "may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated." Pa.R.Crim.P. 600(D)(1).

In calculating time,

periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

The Superior Court has explained:

> Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1239 (Pa. Super. 2004) (en banc) (citation omitted;

brackets in original). Furthermore,

> Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable time and excusable delay. "Excludable time" is classified as periods of delay caused by the defendant. "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Commonwealth v. Moore*, 214 A.3d 244, 248–49 (Pa. Super. 2019) (citations omitted).

Here, the criminal complaint was filed on December 17, 2010.[6] Thus, Petitioner's mechanical run date was December 19, 2011.[7] Although Petitioner's trial did not commence until January 14, 2015, which was well beyond the mechanical run date, the docket shows that the extension of the mechanical run date was largely the result of defense requests for continuation and judicial delay.

On May 17, 2011, the defense requested a continuance for further discussion of a possible non-trial disposition. The case was continued to June 14, 2011. This 28-day period is excludable time and results in an adjusted run date of January 16, 2012.

On June 14, 2011, Petitioner rejected the Commonwealth's offer and a scheduling conference was listed for June 29, 2011. This period of 15 days is excludable time and results in an adjusted run date of January 31, 2012. The scheduling conference was continued to July 12, 2011 due to defense request for further investigation. This 13-day period is excludable time and results in an adjusted run date of February 13, 2012. The scheduling conference was again delayed until July 15, 2011 because the court was on trial. This period of three days brings the adjusted run date to February 16, 2012.

The delays between the scheduling conference held on July 15, 2011 and the motions hearing held on September 15, 2011, resulting from the court's schedule, the fact that Petitioner was not transported to the courthouse, and a continuance request made by the Commonwealth because the assistant district attorney ("ADA") was on funeral leave, all constituted excusable delay. The addition of these 62 days results in an adjusted run date of April 18, 2012.

---

[6] Although the docket indicates the complaint was filed on 1/3/2011, Petitioner lists the complaint date as 12/17/2010.

[7] Because December 17, 2011 was a Saturday, the mechanical run date was instead Monday, December 19, 2011. *See* 1 Pa.C.S. § 1908.

9

On September 15, 2011, Petitioner's motion to set nominal bail was denied. The pretrial conference date of February 3, 2012 and the jury trial date of February 6, 2012 remained. The addition of this 141-day period results in an adjusted run date of September 6, 2012.

On February 3, 2012, trial counsel requested a continuance, informing the court that he would not be prepared for the February 6, 2012 trial date. A pretrial conference was scheduled for August 24, 2012. The addition of 203 days brings the adjusted run date to March 28, 2013.

On August 24, 2012, the trial date was administratively relisted for September 4, 2012. The addition of 11 days results in an adjusted run date of April 8, 2013.

On September 4, 2012, the defense requested a continuance for further investigation. A pretrial conference was scheduled for November 1, 2012. This time was ruled excludable. The addition of 58 days brings the adjusted run date to June 5, 2013.

On November 1, 2012, the case was continued to November 13, 2012 for the status of an offer made by the Commonwealth. The addition of 12 days results in an adjusted run date of June 17, 2013. On November 13, 2012, Petitioner rejected the Commonwealth's offer. A pretrial conference was scheduled for August 23, 2013. The addition of 283 days brings the adjusted run date to March 27, 2014.

On August 23, 2013, the case was continued to a new trial date of September 9, 2013. The addition of 17 days results in an adjusted run date of April 14, 2014.[8]

On September 9, 2013, the case was continued to September 23, 2013 due to the court's schedule. The addition of 14 days brings the adjusted run date to April 28, 2014. The scheduling conference was then relisted for September 24, 2013, resulting in an adjusted run date

---

[8] April 13, 2014 was a Sunday. The adjusted run date is instead Monday, April 14, 2014.

10

of April 29, 2014. On September 24, 2013, the case was continued to November 21, 2013 for a motions hearing. The addition of 58 days brings the adjusted run date to June 26, 2014.

On November 21, 2013, Petitioner's motion to dismiss pursuant to Rule 600 was denied. Petitioner's request for additional discovery was also denied at that time. After the case was reassigned to this Court, a motions hearing was scheduled for February 25, 2014. The addition of this 96-day period of time results in an adjusted run date of September 30, 2014.

On February 25, 2014, this Court granted Petitioner's Rule 600(B) motion and the Commonwealth's motion to revoke bail. On that date, trial counsel requested that new counsel be appointed to represent Petitioner. The next court date was scheduled for February 28, 2014. The addition of three days brings the adjusted run date to October 3, 2014.

On February 28, 2014, the defense requested a continuance after this Court appointed new counsel to represent Petitioner. A status hearing was scheduled for May 12, 2014. The addition of 73 days results in an adjusted run date of December 15, 2014.

On May 12, 2014, a pretrial conference was held. A hearing on Petitioner's motion in limine was scheduled for June 13, 2014. The addition of 32 days brings the adjusted run date to January 16, 2015. The motions hearing was continued from June 13, 2014 to July 17, 2014 because the assigned ADA was on trial. This 34-day period constitutes non-excludable time. Therefore, the adjusted run date remains January 16, 2015.

On July 17, 2014, a continuance was granted to July 22, 2014 because the assigned ADA was unavailable. This period of five days is non-excludable, and the adjusted run date remains the same. On July 22, 2014, there were no motions and trial was scheduled for July 28, 2014. The addition of six days results in an adjusted run date of January 22, 2015.

11

Trial was continued on July 28, 2014 and July 29, 2014 due to the unavailability of the defense expert witness. The Commonwealth objected to the continuance, and the time was ruled excludable. A trial readiness conference was scheduled for November 6, 2014. The addition of this 101-day period brings the adjusted run date to May 4, 2015.[9]

On November 10, 2014, the trial readiness conference was administratively rescheduled for January 8, 2015. The addition of 59 days brings the adjusted run date to July 2, 2015. Because Petitioner's trial began before the adjusted run date, his right to a speedy trial under Rule 600 was not violated.

Having found no Rule 600 violation, this Court must next determine whether a constitutional violation occurred. *See Colon*, 87 A.3d at 356. There are four factors to be considered in determining whether an unconstitutional speedy trial violation has occurred:

> (1) whether the pretrial delay was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice because of the delay. A finding in the defendant's favor of any one of the four factors, standing alone, does not constitute a speedy trial violation. Rather, each of the four factors are related and each must be weighed carefully in the court's evaluation of a criminal defendant's claim that his speedy trial rights were violated.

*Commonwealth v. DeBlase*, 665 A.2d 427, 432 (Pa. 1995) (citations omitted).

As to the first factor, this Court acknowledges that there was an uncommonly long pretrial delay of over three years.

Under the second factor, Petitioner is more to blame than the Commonwealth for the delay. As noted above, the Commonwealth requested three postponements, due to the assigned ADA's unavailability.

---

[9] May 3, 2015 was a Sunday. The adjusted run date is instead Monday, May 4, 2015.

As to the third factor, Petitioner did assert Rule 600 claims relating to his speedy trial rights. As noted above, the Honorable Nina Wright Padilla denied Petitioner's Rule 600(a) motion to dismiss on November 21, 2013, and this Court denied Petitioner's motion to dismiss pursuant to Rule 600(a) on January 13, 2015.

In order to analyze the fourth factor, prejudice to the defendant, this Court must take into account the following interests protected by the speedy trial right:

> (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the impairment of the defense. The last consideration, impairment of or prejudice to the defense, represents the most serious of these three concerns, because the inability of a defendant adequately to properly prepare his case for trial skews the fairness of the entire system.

*DeBlase*, 665 A.2d at 436 (citations omitted). Here, Petitioner's counsel requested several continuances in order to conduct further investigation, to consider potential non-trial dispositions, to have new counsel appointed to represent Petitioner, and because of the unavailability of a defense expert witness. Beyond pretrial incarceration, Petitioner has not indicated how he was prejudiced by the delay in this case.

Considering and weighing all four factors, this Court finds that Petitioner's right to a speedy trial was not violated, and therefore, his claim is without merit.

Next, Petitioner claims that trial counsel was ineffective for failing to object to the admissibility of evidence. Petitioner fails to identify the evidence to which trial counsel was ineffective for failing to object. Accordingly, this claim is without arguable merit.

In his next claim, Petitioner argues that trial counsel was ineffective for failing to object to the amendment to the bills of information. Petitioner also claims that the amendment of the bills of information constituted prosecutorial misconduct and violated his right to procedural and substantive due process. Petitioner's claim concerning prosecutorial misconduct should have

13

been raised earlier but was not, resulting in waiver. *See* 42 Pa.C.S. § 9544(b). Insofar as Petitioner challenges trial counsel's effectiveness based on failing to object to the amendment of the bills of information, this claim fails due to a lack of prejudice.

Pennsylvania Rule of Criminal Procedure 564 governs the amendment of a criminal information. The version of Rule 564 in effect when this Court granted the Commonwealth's motion to amend the information, provided as follows:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (effective until December 20, 2017).[10]

When considering a Pa.R.Crim.P. 564 amendment,

> the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

---

[10] Rule 564 was subsequently amended to read as follows:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (effective December 21, 2017).

14

*Commonwealth v. Beck*, 78 A.3d 656, 660 (Pa. Super. 2013) (citation omitted). The Commonwealth may amend the information even on the day of trial as long as there is no prejudice to the defendant. *See Commonwealth v. Sinclair*, 897 A.2d 1218, 1224 (Pa. Super. 2006) (citation omitted).

In determining whether a defendant would suffer prejudice, the following factors are taken into consideration:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Commonwealth v. Mentzer*, 18 A.3d 1200, 1203 (Pa. Super. 2011) (citation omitted).

As discussed above, the offense date was amended from July 15, 2007 to the summer of 2007. At the motions hearing held on January 13, 2015, trial counsel asked this Court to deny the Commonwealth's request to amend the bills of information based on Petitioner's alibi notice covering July 15, 2007. N.T. 1/13/2015, at 3–4. However, trial counsel also acknowledged that the Commonwealth provided notice of a larger period of time not limited to the date indicated in the bills of information. *Id.* Trial counsel also agreed that the timeframe mentioned at the preliminary hearing was July of 2007. *Id.* at 7.

Here, the amendment brought no new charges and changed no elements of the charges that Petitioner was facing. Further, it is clear that, prior to the January 13, 2015 hearing, Petitioner was aware that the precise date of the offense was unknown. Accordingly, Petitioner suffered no prejudice from the amendment.

15

Petitioner next claims that trial counsel was ineffective for refusing to allow Petitioner to testify in his own defense.

"The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel." *Commonwealth v. Michaud*, 70 A.3d 862, 869 (Pa. Super. 2013) (quoting *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000)).

> In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Id.*

"In addition, where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." *Commonwealth v. Rigg*, 84 A.3d 1080, 1086 (Pa. Super. 2014) (citations omitted). "A defendant will not be afforded relief where he voluntarily waives the right to take the stand during a colloquy with the court, but later claims that he was prompted by counsel to lie or give certain answers." *Commonwealth v. Lawson*, 762 A.2d 753, 756 (Pa. Super. 2000).

Here, after the Commonwealth rested its case, this Court conducted a colloquy regarding Petitioner's right to testify. *See* N.T. 1/15/2015, at 5–9. During the colloquy, the following exchange occurred:

THE COURT: Mr. Johnson, do you wish to testify in your case?

[PETITIONER]: No. I have nothing to say about it, so, I mean --

[TRIAL COUNSEL]: Mr. Johnson, the judge is asking you a very specific question --

16

[PETITIONER]: No.

[TRIAL COUNSEL]: Please let me finish. I'm working really hard for you so bear with me. So her Honor needs to put on the record whether you had an opportunity to talk about whether you want to testify or not. Did we have an opportunity to talk about the benefits and the detriment of you testifying?

[PETITIONER]: Yes.

[TRIAL COUNSEL]: And after our discussion you made a decision whether you would like to take the stand and testify in your case?

[PETITIONER]: Yes.

[TRIAL COUNSEL]: And would you please let her Honor know what your decision is?

[PETITIONER]: No, I don't want to testify.

***

THE COURT: And did you and Mr. Shaffer discuss the fact that you do have a right to testify in this matter?

[PETITIONER]: Yes.

THE COURT: I want to be clear that this is your decision and your decision alone.

[PETITIONER]: Yes.

***

THE COURT: Has anyone promised you anything, forced you or threatened you to make your decision not to testify?

[PETITIONER]: No.

THE COURT: Have you made that decision of your own free will?

17

[PETITIONER]:    Yes.

***

THE COURT:    Are you satisfied with Mr. Shaffer's representation?

[PETITIONER]:    Yes.

*Id.*

Petitioner's decision not to testify was knowing, voluntary, and intelligent. Therefore, Petitioner's claim that trial counsel was ineffective for refusing to allow him to testify is without arguable merit.

### Effectiveness of Appellate Counsel

Petitioner's next two allegations of error concern the effectiveness of appellate counsel. Petitioner claims appellate counsel was ineffective for failing to challenge both the weight and the sufficiency of the evidence. According to Petitioner, he "expressly requested that appellate counsel pursue these grounds for appeal, yet appellate counsel's brief ignored these claims." Statement of Errors, ¶ 2.

This Court's opinion filed in response to Petitioner's direct appeal addressed four claims: the weight of the evidence, the sufficiency of the evidence, the legality of Petitioner's sentence, and an evidentiary ruling. However, it appears that appellate counsel challenged only the legality of Petitioner's sentence in his brief filed with the Superior Court. Nevertheless, Petitioner's ineffectiveness claims must fail due to a lack of prejudice.

"The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses." *Commonwealth v. Rabold,* 920 A.2d 857, 860 (Pa. Super. 2007) (citation omitted). A defendant is not entitled to a new trial based on a weight of the evidence claim unless the

18

verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). Appellate review is limited to whether the trial judge palpably abused his or her discretion in denying the appellant's motion for a new trial. *Id.* As such, a "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Id.* at 879–80 (citation omitted).

This Court provided the following analysis of Petitioner's weight of the evidence claim and concluded that it was without merit.

> [Petitioner] first argues that the verdict was against the weight of the evidence because the victim "gave a different color for [Petitioner's] penis than it actually was as shown through pictures from [Petitioner's] investigator. Statement of Errors, ¶ 1. Specifically, a photograph of [Petitioner's] penis taken by [Petitioner's] investigator on June 10, 2014—approximately seven years after the assault—showed a discoloration on [Petitioner's] penis that I.J.J. did not testify to. Notably, however, I.J.J. was asked only if she recalled describing [Petitioner's] penis as "black, like skin complexion." N.T. 1/14/2015, at 49. She was not asked if there was any discoloration. Moreover, there was no evidence that the discoloration present in the photograph was visible at the time of the assault, seven years prior.
>
> [Petitioner] also argues that the victim's "description of the apartment [where the assault occurred] was different from what it was as shown through the investigator's diagram." Statement of Errors, ¶ 1. [Petitioner] does not identify what those alleged differences were. *Id.* Nor did [Petitioner] establish that the diagram—a drawing prepared by his investigator seven years after the assault—accurately represented the apartment as it looked in the summer of 2007 or even that it was the same apartment where the assault took place. These alleged discrepancies did not render the jury's verdict against the weight of the evidence.
>
> Finally, [Petitioner] suggests that the verdict was against the weight of the evidence because I.J.J. "had ongoing criminal justice issues which may have brought about false testimony." *Id.* At trial, defense counsel asked I.J.J.:
>
> > DEFENSE COUNSEL:     And at the time [of the
> > investigation into the assault]

|  |  |
|---|---|
|  | you had an open case over in juvenile court, right? |
| I.J.J.: | Yep. |
| DEFENSE COUNSEL: | And did they offer to help you out with that at all? |
| I.J.J.: | Yeah. |
| THE COURT: | Who is they...? |
| DEFENSE COUNSEL: | Sorry, did any of the prosecution or police officers offer to help you out with your open criminal matter? |
| I.J.J.: | Nope. It wasn't criminal. |

N.T. 1/14/2015, at 48.

I.J.J. specifically testified that she did not receive any favorable treatment, let alone that she received favorable treatment based on her cooperation with the instant investigation. The weight to assign to I.J.J.'s testimony, including consideration of an open matter that she had in juvenile court, was entirely within the fact-finder's purview. *Commonwealth v. Hlatky*, 626 A.2d 575, 580 (Pa. Super. 1993). Because the verdict did not shock one's sense of justice, the court did not abuse its discretion when it denied [Petitioner's] weight of the evidence claim.

Trial Court Opinion, 5/23/2017, at 2–4.

Petitioner has failed to establish why the Superior Court would have determined that this Court abused its discretion in denying the weight of the evidence claim, had the claim been addressed in his appellate brief. Therefore, Petitioner has not proven that appellate counsel was ineffective for failing to pursue the claim on appeal.

On sufficiency review, all evidence is viewed in the light most favorable to the verdict winner to determine whether "there is sufficient evidence to enable the fact-finder to find every

20

element of the crime beyond a reasonable doubt." *Commonwealth v. Greenlee*, 212 A.3d 1038, 1042 (Pa. Super. 2019) (citation omitted). The Commonwealth may meet its burden "by means of wholly circumstantial evidence." *Id.* Finally, the reviewing court "may not weigh the evidence and substitute [its] judgment for the fact-finder." *Id.*

In its opinion, this Court addressed Petitioner's sufficiency of the evidence claim as follows:

> Although his second claim of error is fashioned as a sufficiency claim, in substance, it is a reiteration of his weight of the evidence claim. [Petitioner] argues the evidence was insufficient because "[I.J.J.'s] own testimony about [Petitioner's] genitals was directly [contradicted] by photographs" and her testimony "was incredible and lacked details that had the ring of truth, especially when weighed against the defense investigator's evidence." Statement of Errors, ¶ 2. *See Commonwealth v. Kinney*, 157 A.3d 968, 972 (Pa. Super. 2017) ("Appellant's claims are directed entirely to the credibility of the victim's testimony...and, as such, challenge the weight, not the sufficiency, of the evidence."). [Petitioner's] sufficiency claim is therefore waived.

Trial Court Opinion, 5/23/2017, at 4.

Petitioner has not explained how his challenge to the sufficiency of the evidence would have been successful, when in fact it was a weight of the evidence argument. *See Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (holding that an "appellant's challenge to the sufficiency of the evidence must fail[,]" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 281–82 (Pa. Super. 2009) (finding that a sufficiency claim raising weight of the evidence arguments would be dismissed). Accordingly, Petitioner's claims challenging the effectiveness of appellate counsel are without merit.

## Legality of Sentence

In his final two allegations of error, Petitioner challenges the legality of his sentence. First, Petitioner claims that he was improperly sentenced as a third-strike offender because he was never convicted as a second strike offender. Petitioner's claim has been previously litigated.

"A claim is previously litigated under the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Commonwealth v. Edmiston*, 851 A.2d 883, 887 (Pa. 2004) (citing 42 Pa.C.S. § 9544(a)(2)).

On direct appeal, Petitioner challenged the legality of his sentence, claiming that he should not have been sentenced pursuant to the mandatory minimum of 25 years' incarceration because he did not commit two qualifying crimes of violence. The Superior Court affirmed Petitioner's judgment of sentence, finding that the mandatory minimum sentence imposed pursuant to the "third strike" provision in 42 Pa.C.S. § 9714 was proper.

In his second claim challenging the legality of his sentence, Petitioner argues his lifetime registration and reporting requirements pursuant to the Sexual Offender Registration and Notification Act (SORNA) are illegal because they exceed the statutory maximums for his offenses. Because Subchapter I of SORNA does not constitute criminal punishment, Petitioner's claim fails. *See Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020).

III. CONCLUSION

For the foregoing reasons, this Court's order dismissing Petitioner's petition for post-conviction relief under the Post Conviction Relief Act should be affirmed.

BY THE COURT:

DONNA M. WOELPPER, J.

22

# IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF        :       CP-51-CR-0003440-2011
PENNSYLVANIA             :
                                  :
                                  :
vs.                           :
                                  :
                                  :
NATHANIEL JOHNSON       :

## PROOF OF SERVICE

I hereby certify that I am this 9th day of February, 2021, serving the foregoing Opinion on the persons indicated below:

Lawrence J. O'Connor, Jr., Esquire
2301 Cherry Street, Apt. 6A
Philadelphia, PA 19103

Lawrence J. Goode, Assistant District Attorney
Supervisor, Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Anna Dillon
Secretary to the Honorable
Donna M. Woelpper